ROBERT S. GIANELLI, #82116
JOSHUA S. DAVIS, #193187
ADRIAN J. BARRIO, #219266
GIANELLI & MORRIS, A Law Corporation
550 South Hope Street, Suite 1645
Los Angeles, CA 90071
Tel: (213) 489-1600; Fax: (213) 489-1611
rob.gianelli@gmlawyers.com
joshua.davis@gmlawyers.com
adrian.barrio@gmlawyers.com

Attorneys for Plaintiff,
BRENDA HONEYCUTT
on behalf of herself and all others
similarly situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA HONEYCUTT, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM, INC.; ANTHEM UM SERVICES, INC.; AMERICAN IMAGING MANAGEMENT, INC.,<br><br>Defendants. | Case No.: 2:21-cv-6124<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR BENEFITS, DETERMINATION OF RIGHTS AND BREACH OF FIDUCIARY DUTY UNDER ERISA** |

Plaintiff, Brenda Honeycutt, on behalf of herself and all others similarly situated, herein sets forth the allegations of her Complaint against Defendants Anthem, Inc., Anthem UM Services, Inc. ("Anthem UM"), and American Imaging Management, Inc., doing business as AIM Specialty Health ("AIM").

## INTRODUCTION

1. Defendant Anthem, Inc. states that "[w]e are one of the largest health benefits companies in the United States in terms of medical membership, serving approximately 40 million medical members through our affiliated health plans as of December 31, 2018."[1] Anthem, Inc. owns "Blue" organizations in California and many other states, as well as other subsidiaries.[2] Through its wholly-owned subsidiaries, including Anthem UM and AIM, Anthem, Inc. acts as a fully integrated company that is in the business of insuring and/or administering group health plans within the meaning of 29 Code of Federal Regulations § 2560.503-1(m) (both fully insured and self-insured), most of which are employer-sponsored and governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Those ERISA-governed group health plans are hereinafter referred to as "Anthem plans."

2. With respect to all Anthem plans, Anthem UM and, with certain claims, AIM, serve as the claims administrator, responsible for determining whether claims are covered and effectuating any resulting benefit payment. Anthem, Inc. aids Anthem UM and AIM in their administrative duties by, among other things, participating with Anthem UM and AIM in the development of coverage guidelines, collaborating with

---

[1] Anthem Inc.'s 2019 Securities and Exchange Commission Form 10-K.

[2] Anthem, Inc. and its subsidiaries operate under the "Blue" moniker in California, Colorado, Connecticut, Georgia, Indiana, Kentucky, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia and Wisconsin. Anthem also conducts business through subsidiaries such as Amerigroup, Simply Healthcare Holdings, HealthLink, UniCare, and CareMore Health Group, Inc.

Anthem UM and AIM on decisions regarding the types of claims that will be approved or denied, including the denial of the claims alleged herein, and assisting Anthem UM and AIM in carrying out their various other administrative duties. As such, Defendants Anthem, Inc., Anthem UM, and AIM (jointly "Anthem") have acted as ERISA fiduciaries with respect to all Anthem plans, including Plaintiff's plan.

3. Plaintiff brings this action to address Anthem's practice of improperly denying claims for Coflex, an interlaminar stabilization device, under Anthem plans.

## JURISDICTION AND VENUE

4. This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) as it involves claims by Plaintiff for employee benefits under employee benefit plans regulated and governed by ERISA. Subject matter jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

5. The Court has personal jurisdiction over Defendants because ERISA provides for nationwide service of process, and each Defendant has minimum contacts with the United States. 29 U.S.C. § 1132(e)(2).

6. The claims of Plaintiff and the putative class arise out of policies Defendants issued, administered, and/or implemented in this District. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (setting forth special venue rules applicable to ERISA actions).

## THE PARTIES

7. Plaintiff was at all relevant times covered under an employer-sponsored benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits. Plaintiff resides in Hollywood, Florida. Plaintiff's employer, Performant Financial Corporation, is a corporation with its principal place of business in Alameda County, California.

8. Anthem, Inc. and Anthem UM are corporations with their principal place of business in Indianapolis, Indiana. AIM is a corporation with its principal place of

1  business in Chicago, Illinois. Anthem UM and AIM administer and make benefit
2  determinations related to ERISA group health care plans around the country. As
3  alleged below, Plaintiff's claim was denied in a letter that said the claims decision was
4  made in Anthem's Newbury Park office in Ventura County within this District and
5  Plaintiff's appeal was denied in a letter that said the appeal decision was made at
6  Anthem's Woodland Hills office in Los Angeles County within this District. Thus,
7  Plaintiff's claim was administered within this District.

8      9. Anthem, Inc., Anthem UM and AIM do not operate independently and in
9  their own interests, but serve solely to fulfill the purpose, goals and policies of each
10 other.

## SUBSTANTIVE ALLEGATIONS

**A. Coflex**

10. Lumbar spinal stenosis, affecting 1.6 million patients annually, is a debilitating and degenerative disease in older patients (50 years and above) often associated with significant leg and back pain, numbness and weakness, causing a significant reduction in the activities of daily living. Traditional surgical treatment options for lumbar spinal stenosis include a decompression that removes bone and soft tissue and may also require a fusion to stabilize the spine.

11. Coflex is an interlaminar stabilization device, a U-shaped spacer, that is inserted through a minimal incision to keep the decompressed area of the spine open and stable. Decompression procedures are more durable and sustainable when Coflex is added on for treatment. Patients that receive decompression alone are almost twice as likely to need a future intervention (either a reoperation or epidural injection).

12. Coflex is considered a Class III medical device by the FDA. Class III medical devices usually sustain or support life, are implanted, or prevent potential unreasonable risk of illness or injury. An example of a Class III device is an implantable pacemaker.

13. As explained by the United States Supreme Court in *Riegel v. Medtronic, Inc.* (2008) 552 U.S. 312, the Medical Device Amendments of 1976 "established a rigorous regime of premarket approval [PMA] for new Class III devices." *Id*. at 317. The PMA process is exhaustive and requires, among other things, a multivolume application containing full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a "full statement" of the device's "components, ingredients, and properties and of the principle or principles of operation"; "a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device"; samples or device components required by the FDA; and a specimen of the proposed labeling. *Id*. at 317-318 (citing 21 U.S.C. § 360e(c)(1).)

14. One of the main components of a PMA is a clinical (human) trial to test the device for safety and effectiveness. The sponsor of a Class III medical device must submit an application to the FDA to perform a clinical trial with their device. *See* 21 C.F.R. § 812.20(a)(1). As part of the application, the sponsor must submit an "investigational plan" that describes, among other things, "the methodology to be used and an analysis of the protocol demonstrating that the investigation is scientifically sound." 21 C.F.R. § 812.25(b).

15. The FDA spends an average of 1,200 hours reviewing each application and grants PMA only if it finds there is a "'reasonable assurance' of the device's 'safety and effectiveness.'" *Riegel*, 552 U.S. at 318 (citing 21 U.S.C. § 360e(d).) The agency must "weig[h] any probable benefit to health from the use of the device against any probable risk of injury or illness from such use." *Id*. (citing 21 U.S.C. § 360c(a)(2)(C).)

16. Coflex was vetted through the arduous PMA process described above. On October 17, 2012, the FDA granted PMA for Coflex.

17. Since that time, the continued safety and effectiveness of Coflex has been demonstrated by, among other things: additional clinical studies showing safety and effectiveness as documented in peer reviewed medical literature; wide acceptance and use by spine surgeons across the country; and positive coverage recommendations (that Coflex is safe and effective and should be treated as a covered service) from spine surgery specialty societies such as the International Society for the Advancement of Spine Surgery and the North American Spine Society, as well as by the American Pain Society and the National Institute for Health and Care Excellence.

**B.  Anthem's categorical denial of Coflex as experimental/investigational.**

18. Anthem plans cover surgical and hospital services on both an inpatient and outpatient basis to treat illness and injury. They provide for payment for the diagnosis, cure, mitigation, treatment, or prevention of disease, or amounts paid for the purpose of affecting any structure or function of the body. As part of these benefits, Anthem plans cover the treatment of pain resulting from illness or injury.

19. In reviewing and deciding claims under Anthem plans, Anthem utilizes internal coverage guidelines called "Medical Policies." The Medical Policies are not themselves part of Anthem's plans, but rather are interpretive guidelines used by Anthem to assist it in making fact-based determinations regarding whether certain medical services fall within a particular contractual term or exclusion that precludes or limits coverage.

20. Anthem plans exclude from coverage those medical services that Anthem considers "investigational." A Medical Policy entitled "Investigational Criteria ADMIN.00005" sets forth fact-based criteria Anthem uses in deciding whether a particular claim for medical services is investigational. It provides in pertinent part:

> "Investigational" means that the procedure, treatment, supply, device, equipment, facility or drug (all services) does not meet the Company Technology Evaluation Criteria because it does not meet one or more of the following criteria:

- have final approval from the appropriate government regulatory body; or
- have the credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community which permits reasonable conclusions concerning the effect of the procedure, treatment, supply, device, equipment, facility or drug (all services) on health outcomes; or
- be proven materially to improve the net health outcome; or
- be as beneficial as any established alternative; or
- show improvement outside the investigational settings.

In addition to the above criteria, the Medical Policy & Technology Assessment Committee (MPTAC) will consider recommendations of national physician specialty societies, nationally recognized professional healthcare organizations and public health agencies, and in its sole discretion, may consider other relevant factors, including information from the practicing community.

21. In addition to developing Medical Policies which supplement and re-emphasize the plan's own fact-based criteria on which a particular contract term or exclusion's applicability will turn, such as ADMIN.00005, Anthem has developed Medical Policies with respect to certain types of medical treatments that categorically *apply* that criteria and deem it satisfied. Many of Anthem's Medical Policies, for example, identify treatments that Anthem has unilaterally decided to be "investigational." Anthem follows these Medical Policies when deciding claims made under Anthem plans.

22. Anthem has developed and used the Medical Policy for Implanted Devices for Spinal Stenosis, SURG.00092 ("SURG.00092") that deems the use of Coflex "**investigational and not medically necessary.**" (Emphasis in original.)

23. Relying on SURG.00092, and as demonstrated by Anthem's denial of Plaintiff's claim, Anthem has systematically denied all claims for Coflex as investigational and not medically necessary without regard to a member's medical condition, need, or qualification for the device.

24. Contrary to Anthem's factual conclusion in SURG.00092, treatment of spinal stenosis with Coflex is not investigational and is medically necessary. Coflex has been shown to be a safe and effective treatment because it has been approved by the FDA and, since that approval, has been shown to be safe and effective by peer reviewed literature on clinically demonstrated benefits of the device, including that Coflex shows improved composite clinical success over decompression alone, results in less trauma and faster recovery than fusion, is non-inferior to fusion, has been widely used by spine surgeons across the nation, and has received positive coverage recommendations (that it is safe and effective and should be treated as a covered service) by spine surgery specialty societies such as the International Society for the Advancement of Spine Surgery and the North American Spine Society, as well as by the American Pain Society and the National Institute for Health and Care Excellence.

### C.  Anthem's denial of Brenda Honeycutt's claim.

25. At all relevant times, Plaintiff was covered under an ERISA group health plan that was arranged by her employer, Performant Financial Corporation. ("Plaintiff's Anthem plan"). Plaintiff's Anthem plan was purchased by her employer from Anthem subsidiary Blue Cross of California dba Anthem Blue Cross, a health care service plan regulated by the California Department of Managed Health Care. This ERISA group health plan was at all relevant times administered by Anthem.

26. Like all Anthem plans, Plaintiff's Anthem plan covers health services to treat illnesses and injuries. It is an ERISA group health plan because it is arranged by her employer for the benefit of its employees and their dependents. It provides payment for the diagnosis, cure, mitigation, treatment, or prevention of disease, or amounts paid for the purpose of affecting any structure or function of the body.

27. Plaintiff's Anthem plan excludes from coverage treatment for services that are "determined to be Experimental / Investigational." These terms are defined in Plaintiff's Anthem plan as:

**Experimental Procedures (Experimental)**
Procedures that are mainly limited to laboratory and/or animal research, but which are not generally accepted as proven and effective procedures within the organized medical community. Anthem has discretion to make this determination. However, if you have a life-threatening or seriously debilitating condition and Anthem determines that requested treatment is not a Covered Service because it is Experimental, you may request an Independent Medical Review. Please refer to the "Grievance and External Review Procedures" section of this Booklet.

**Investigational Procedures (Investigational)**
Procedures, treatments, supplies, devices, equipment, facilities, or drugs (all services) that do not meet one (1) or more of the following criteria:
- ♦ have final approval from the appropriate government regulatory body; or
- ♦ have the credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community which permits reasonable conclusions concerning the effect of the procedure, treatment, supply, device, equipment, facility or drug (all services) on health outcomes; or
- ♦ be proven materially to improve the net health outcome; or
- ♦ be as beneficial as any established alternative; or
- ♦ show improvement outside the investigational settings.

Recommendations of national Physician specialty societies, nationally recognized professional healthcare organizations and public health agencies, as well as information from the practicing community, may also be considered.

28.   Plaintiff's Anthem Plan also requires that services must be "medically necessary" which is defined in Plaintiff's Anthem Plan as:

Medically Necessary shall mean health care services that a Physician, exercising professional clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
- ♦ In accordance with generally accepted standards of medical practice,
- ♦ Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease,
- ♦ Not primarily for the convenience of the patient, Physician or other health care Provider, and

8

    ♦ Not more costly than an alternative service, including the same service in an alternative setting, or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's injury, disease, illness or condition.

For example we will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis or an infusion or injection of a specialty drug provided in the outpatient department of a hospital if the drug could be provided in a Physician's office or the home setting.

For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, Physician specialty society recommendations and the views of Physicians practicing in relevant clinical areas and any other relevant factors.

29. Plaintiff has a history of severe lumbar back pain, and has received various treatments including epidurals, physical therapy, and pain medication.

30. As a result of this condition, Plaintiff experiences severe pain when sitting or standing.

31. An MRI revealed moderate spinal stenosis with grade 1 spondylolisthesis. Plaintiff's physician, an orthopedic surgeon, recommended surgery with Coflex.

32. In conjunction with her orthopedic surgeon, Plaintiff sought authorization from Anthem for a decompression procedure combined with the Coflex stabilizing device.

33. On May 11, 2021, Anthem sent a letter to Plaintiff stating that her claim was "[r]eviewed for [her] plan by AIM Specialty Health (AIM)." The letter advised Plaintiff that her claim for surgery with Coflex was denied on the basis it is "[e]xperimental/investigational." Anthem stated that:

> Your doctor told us that you have low back pain. Your doctor also told us that you have narrowing of the space around the bundle of nerves running down your back. Your doctor wants you to have surgery on your back. This surgery is to open the narrowed space. It is also to take pressure off your bundle of nerves. We reviewed the notes we received. The notes show that during surgery, your doctor wants to insert a device to help open the narrowed space. The narrowed space can be opened without inserting a device. There are not enough scientific

studies to show that inserting a device to open the narrowed space would be safe and effective for you. We used Health Plan Medical Policy (SURG.00092) titled Implanted Devices for Spinal Stenosis to make this decision.

34. Plaintiff appealed this decision. In connection with her appeal, Plaintiff advised Anthem that the decompression surgery with Coflex results in improved clinical success over disk fusion, less trauma and faster recovery than fusion, and is non-inferior to fusion, citing various clinical studies. She also advised Anthem that surgery with Coflex had received a coverage recommendation from two prominent societies of spinal surgeons.

35. On July 16, 2021, Anthem sent a letter to Plaintiff stating that her appeal was "[r]eviewed for [her] plan by Anthem UM Services, Inc." The letter advised Plaintiff that her appeal was denied, again relying on SURG.00092.

> There are not enough scientific studies to show that inserting a device to open the narrowed space would be safe and effective. For this reason, the appeal request is denied as investigational. We used Health Plan Medical Policy Implanted Devices for Spinal Stenosis (SURG.00092).

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action on behalf of herself and all others similarly situated as a class action pursuant to Federal Rules of Civil Procedure Rule 23. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of the following class:

> All persons covered under ERISA health plans, self-funded or fully insured, that are administered by Anthem and whose claims for Coflex were denied on the basis the treatment is investigational and not medically necessary.

37. Plaintiff and the class members reserve the right under Federal Rule of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by further division into subclasses, or by limitation to particular issues.

38. This action has been brought and may be properly maintained as a class action under the provisions of Federal Rules of Civil Procedure Rule 23 because it meets the requirements of Rule 23(a) and Rule 23(b)(1) and (b)(2).

**A. Numerosity.**

39. The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable. While the precise number of proposed class members has not been determined at this time, Plaintiff is informed and believes that there are a substantial number of individuals covered under Anthem plans who have been similarly affected.

**B. Commonality.**

40. Common questions of law and fact exist as to all members of the proposed class.

**C. Typicality.**

41. The claims of the named Plaintiff are typical of the claims of the proposed class. Plaintiff and all members of the class are similarly affected by Anthem's wrongful conduct.

**D. Adequacy of representation.**

42. Plaintiff will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Plaintiff are competent and experienced in litigating large and complex class actions, including class actions against health plans such as Anthem.

**E. Superiority of class action.**

43. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

44. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties that are likely to be

encountered in the management of this action that would preclude its maintenance as a class action.

F.   **Rule 23(b) requirements.**

45.   Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for Anthem.

46.   Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

47.   Anthem has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**DENIAL OF PLAN BENEFITS AND FOR CLARIFICATION OF RIGHTS UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(1)(B)]**

48.   Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

49.   29 U.S.C. § 1132(a)(1)(B) entitles Plaintiff to recover benefits due and to enforce and clarify her rights to the benefits at issue.

50.   As alleged herein, Plaintiff's Anthem plan provides surgical and hospital services on both an inpatient and outpatient basis to treat illness and injury, including coverage for prosthetic devices, durable medical equipment, professional services, and other medical services.

51.   As alleged herein, Plaintiff requested that Anthem authorize coverage for a Coflex device to treat her lumbar back pain that was recommended by her orthopedic surgeon.

52.   As alleged herein, Anthem has followed a practice of denying claims for Coflex on the basis the device is investigational and not medically necessary under

Anthem's coverage guideline SURG.00092 because there are "not enough scientific studies" showing Coflex is "safe and effective."

53. Pursuant to its practice, Anthem denied Plaintiff's request for surgery with Coflex device on the basis the treatment is investigational and not medically necessary under SURG.00092. However, the use of Coflex is not investigational and is medically necessary under the pertinent plan provisions. Coflex has been shown to be a safe and effective treatment because it has been approved by the FDA and, since that approval, has been shown to be safe and effective by peer reviewed literature on clinically demonstrated benefits of the device, including that Coflex shows improved composite clinical success over decompression alone, results in less trauma and faster recovery than fusion, is non-inferior to fusion, has been widely used by spine surgeons across the nation, and has received positive coverage recommendations (that it is safe and effective and should be treated as a covered service) by spine surgery specialty societies such as the International Society for the Advancement of Spine Surgery and the North American Spine Society, as well as by the American Pain Society and the National Institute for Health and Care Excellence.

54. Plaintiff has exhausted her administrative remedies, as alleged above.

55. Based on the foregoing, Plaintiff and the class members seek reevaluation and reprocessing of their claims for Coflex without the erroneous "investigational" and "not medically necessary" denial bases under appropriate and valid medical criteria; a clarification of future rights; and attorney fees.

**SECOND CLAIM FOR RELIEF**
**BREACH OF FIDUCIARY DUTY AND EQUITABLE RELIEF UNDER AN ERISA PLAN [29 U.S.C. § 1132(a)(3)]**

56. Plaintiff and the class members repeat and re-allege each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

57. As alleged herein, Anthem has acted as an ERISA fiduciary with respect to the administration and claims decisions under Anthem plans and, in particular, has acted as an ERISA fiduciary in denying claims for Coflex devices, as alleged herein.

58. As alleged herein, Plaintiff's Anthem plan provides surgical and hospital services on both an inpatient and outpatient basis to treat illness and injury, including coverage for prosthetic devices, durable medical equipment, professional services, and other medical services.

59. As alleged herein, Plaintiff requested that Anthem authorize coverage for Coflex to treat her lumbar back pain that was recommended by her orthopedic surgeon.

60. As alleged herein, Anthem has followed a practice of denying claims for Coflex on the basis the use of the device is investigational and not medically necessary under Anthem's coverage guideline SURG.00092 because there are "not enough scientific studies" showing Coflex is "safe and effective."

61. Pursuant to its practice, Anthem denied Plaintiff's request for treatment with Coflex on the basis the use of Coflex is investigational and not medically necessary under SURG.00092. However, use of Coflex is not investigational and is medically necessary under the pertinent plan provisions. Coflex has been shown to be a safe and effective treatment because it has been approved by the FDA and, since that approval, has been shown to be safe and effective by peer reviewed literature on clinically demonstrated benefits of the device, including that Coflex shows improved composite clinical success over decompression alone, results in less trauma and faster recovery than fusion, is non-inferior to fusion, has been widely used by spine surgeons across the nation, and has received positive coverage recommendations (that it is safe and effective and should be treated as a covered service) by spine surgery specialty societies such as the International Society for the Advancement of Spine Surgery and the North American Spine Society, as well as by the American Pain Society and the National Institute for Health and Care Excellence.

62. Pursuant to 29 U.S.C. § 1104(a), Anthem was required to discharge its fiduciary duties with respect to Anthem plans solely in the interest of the participants and beneficiaries and--

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

... and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

63. Anthem violated its duty of loyalty under 29 U.S.C. § 1104(a)(1)(A) by: (a) creating SURG.00092 that erroneously classifies the use of Coflex as investigational and excluded under all Anthem plans, as alleged herein; (b) instructing claims personnel to implement SURG.00092 for Coflex claims and to deny those claims on the basis they are investigational; and (c) violating 29 Code of Federal Regulations § 2560.503-1(g)(1)(i) because SURG.00092 provides no rationale as to how treatment with Coflex could be investigational based on actual clinical studies and the widespread acceptance of the devices by the medical community. These actions by Anthem cause the deprivation of benefits under Anthem plans for participants and their beneficiaries and increase the reasonable expenses of administering the plan because they cause a systematic denial of Coflex claims resulting in loss of benefits, needless appeals, and other expenses.

64. Anthem violated its duty of due care under 29 U.S.C. § 1104(a)(1)(B) by: (a) creating SURG.00092 that erroneously classifies Coflex as investigational and excluded under all Anthem plans, as alleged herein; (b) instructing claims personnel to implement SURG.00092 for Coflex claims and to deny those claims on the basis they are investigational; and (c) violating 29 Code of Federal Regulations § 2560.503-1(g)(1)(i) because SURG.00092 provides no rationale as to how treatment with an

FDA-approved device could be investigational based on actual clinical studies and the widespread acceptance of the devices by the medical community.

65. Anthem violated its duty to comply with plan terms under 29 U.S.C. § 1104(a)(1)(D) by: (a) creating SURG.00092 that erroneously classifies Coflex as investigational and excluded under all Anthem plans, as alleged herein; (b) instructing claims personnel to implement SURG.00092 for Coflex claims and to deny those claims on the basis they are investigational; and (c) violating 29 Code of Federal Regulations § 2560.503-1(g)(1)(i) because SURG.00092 provides no rationale as to how Coflex could be investigational based on actual clinical studies and the widespread acceptance of the devices by the medical community.

66. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the class members seek declaratory, equitable and remedial relief as follows:

    a. An order declaring that Anthem's denials of Coflex claims as investigational and not medically necessary were wrong and improper and that Anthem has violated 29 Code of Federal Regulations §§ 2560.503-1(g)(1)(i) and (g)(1)(v)(B);

    b. A class-wide injunction requiring Anthem to retract that portion of the Medical Policy SURG.00092 it uses to deny claims for Coflex as investigational and not medically necessary;

    c. A class-wide injunction requiring Anthem to provide notice to all class members, in the form and manner required by ERISA, of the retraction;

    d. A class-wide injunction requiring Anthem to stop violating 29 Code of Federal Regulations §§ 2560.503-1(g)(1)(i) and (g)(1)(v)(B);

    e. Plaintiff is not seeking any relief in this Second Claim for Relief under 29 U.S.C. § 1132(a)(3) that is duplicative of the relief sought in the First Claim for Relief under 29 U.S.C. § 1132(a)(1)(B). However, if it is determined that the reprocessing relief sought in the First Claim for Relief cannot be awarded because such relief is more appropriately sought in the Second Claim for Relief, then Plaintiff

requests in the claim a reprocessing of the denied claims for Coflex with appropriate instructions for reprocessing;

        f.      Surcharge, i.e., an accounting of any profits made by Anthem from the monies representing the improperly denied claims and disgorgement of any profits;

        g.      Such other equitable and remedial relief as the Court may deem appropriate; and

        h.      Attorneys' fees in an amount to be proven.

## REQUEST FOR RELIEF

Wherefore, Plaintiff and the class members pray for judgment against Anthem as follows:

1. Reevaluation and reprocessing of their claims for Coflex with appropriate instructions for reprocessing;

2. A clarification of rights to future benefits under the plan for all class members;

3. Interest;

4. Injunctive and declaratory relief, as described above;

5. An accounting of any profits made and retained through the improper denial of claims and disgorgement of any profits (surcharge);

6. Attorneys' fees; and

7. Such other equitable and remedial relief as the Court may deem just and proper.

DATED: July 29, 2021                                              GIANELLI & MORRIS

                                                        By: /s/ Adrian J. Barrio
                                                            ROBERT S. GIANELLI
                                                             JOSHUA S. DAVIS
                                                             ADRIAN J. BARRIO
                                                             Attorneys for Plaintiff
                                                             BRENDA HONEYCUTT